AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# United States District Court
for the
Eastern District of Tennessee



FILED

MAY 08 2024

Clerk, U. S. District Court
Eastern District of Tennessee
At Greeneville

IN THE MATTER OF THE SEARCH OF )
INFORMATION ASSOCIATED WITH THE )
CELLULAR TELEPHONE ASSIGNED CALL ) Mag. No.: 2:24-MJ-92
NUMBERS (423) 557-5349 AND (423) 483-9328 )
)

## APPLICATION FOR A WARRANT BY
## TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, Matthew W. Cole, Task Force Officer of the U.S. Department of Justice, Drug Enforcement Administration, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location)*: **See Attachment A**
located in the Eastern District of Tennessee, there is now to concealed *(identify the person or describe the property to be seized)*: **See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime
☒ contraband, fruits of a crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of 21 U.S.C. §§ 846 and 841(a)(1), and the application is based on these facts: **See Attached Affidavit.**

☐ Continued on the attached sheet.
☑ Delayed notice _30_ days (give exact ending date if more than 30 _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_/s/ Matthew W. Cole_
TFO Matthew W. Cole, DEA
*Applicant's signature*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___Telephone___ (specify reliable electronic means).

Date: __5/8/24__

City and State: __Greeneville, Tennessee__

_/s/ Cynthia Richardson Wyrick_
*Judge's signature*
CYNTHIA RICHARDSON WYRICK, U.S. Magistrate Judge
*Printed name and title*



FILED

Mar 8 2024

Clerk, U. S. District Court
Eastern District of Tennessee
At Greeneville

IN THE MATTER OF THE SEARCH
OF INFORMATION ASSOCIATED
WITH THE CELLULAR
TELEPHONE ASSIGNED CALL
NUMBERS **(423) 557-5349** AND
**(423) 483-9328**

Case No. 24-MJ-92

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Matthew W. Cole, Task Force Officer, United States Department of Justice, Drug Enforcement Administration, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts stored at premises owned, maintained, controlled, or operated by Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Verizon Wireless to disclose to the government records and other information in its possession pertaining to the subscriber or customers associated with the account, including the contents of communications.

1

2.      In 2017, I graduated from Bethel University with a bachelor's degree in Criminal Justice. In 2010, I attended Basic Police School at the Tennessee Law Enforcement Training Academy and was qualified to serve as a law enforcement officer in Tennessee by the Peace Officer Standards and Training Commission. I have been a certified police officer for approximately thirteen years. I was employed by the Sullivan County Sheriff's Office for six years, starting in 2008. Three of those years I spent as a uniformed patrol officer. During that time, I made many arrests of subjects for illegally possessing drugs and for illegally possessing drugs for resale. I was then transferred to the K-9 division and spent three years there as a K-9 deputy. During that time, I arrested and investigated many cases involving the illegal sale and distribution of drugs.

3.      I now work for the Tennessee Highway Patrol as a State Trooper and have been working in this capacity for almost eight years. During this time, I have been a K-9 Trooper for over two years. I have made many arrests for the illegal possession of controlled substances. I have also been a part of Tennessee Highway Patrol Special Operations unit for the last five years. That unit is tasked with handling situations outside the normal duties performed by members within the department. Each member of the unit is trained in all specialized sections within the unit (Aviation Section, Special Weapons and Tactics, Explosive Ordnance Disposal, Search and Rescue, and different facets of K-9 utilization). I am currently assigned to the Drug Enforcement Administration as a Task Force Officer. I have extensive training and experience in the field of illegal drug investigations, and I have received numerous hours of on-the-job training while working with other law enforcement officers of the Tennessee Highway Patrol and other local, state, and federal law enforcement agencies. Along with that training, I have also received numerous hours of training in various criminal investigation courses. These courses include, but are not limited to, Criminal Investigations and Drug Interdiction Assistance Programs.

4. Through the training and experience identified above, I have learned that trafficking in illegal drugs is an activity dependent upon communications. Drug traffickers need to stay in regular contact with sources of supply and customers, and as a result often make use of the latest in communications technology, such as cellular telephones. I have also learned that drug traffickers maintain records of sales, so that they can keep track of money that they owe to sources, and money that is owed to them by customers. These records can be maintained on mobile devices such as cell phones. Finally, I am aware that drug traffickers may utilize information technology to conduct transactions that evidence drug trafficking, either by communicating through a cell phone, or using the cell phone to make travel arrangements, payment arrangements, or purchase assets with the proceeds of drug transactions.

I have conducted numerous drug investigations utilizing various investigative techniques. Through these investigations, and my training, and experience, I have become familiar with the methods used by narcotics traffickers to smuggle and safeguard narcotics, distribute narcotics, and collect and launder related proceeds. I am aware of the sophisticated tactics they routinely use to attempt to thwart any investigation of their organizations. I have authored numerous search warrants which have resulted in the seizure of controlled substances, items classified as unlawful drug paraphernalia, firearms and ammunition associated with illegal drugs, and other common evidence associated with illegal drugs. I have also assisted in the prosecution of known drug offenders, as a result of the aforementioned experience, training, and investigative techniques.

Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846, have been committed, and are being committed, by Noah William COOPER and

3

others known and unknown. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

5. The information contained in this affidavit is based on my personal observations, observations of other law enforcement officers, observations of Confidential Sources as relayed to me, my review of official police and government reports, my review of records and documents gathered during this investigation, and consultation with other agents involved in the investigation. This affidavit contains information necessary to support probable cause for the search warrant. The information contained in this affidavit is not intended to include each and every fact and matter observed by or known to the United States.

6. This affidavit is submitted in support of a request that a search warrant be issued for the stored electronic communications associated with the cellular telephone bearing telephone number **(423) 557-5349** (hereinafter referred to as **Target Telephone 1**) and cellular telephone bearing telephone number **(423) 483-9328** (hereinafter referred to as **Target Telephone 2**) collectively hereinafter referred to as **Target Telephones**, both of which are utilized by Noah COOPER.

7. The **Target Telephones** are serviced by Verizon Wireless. As of this date, subscriber information for the **Target Telephones** has been requested by Task Force Officer (TFO) Brian Vicchio and (TFO) Matthew Cole however, the subpoena search results only indicated the **Target Telephones** are a Verizon Wireless provider. Based on the facts contained herein, I believe that Noah COOPER utilizes the **Target Telephones** in a continuing drug conspiracy trafficking fentanyl in the Eastern District of Tennessee.

8. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court

4

of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9. The United States, including the Drug Enforcement Administration (DEA) and Washington County Sheriff's Office (WCSO) are conducting a criminal investigation of Noah COOPER and others regarding violations of 21 U.S.C. § 841(a)(1), distribution and possession with the intent to distribute fentanyl, Schedule I controlled substances, and 21 U.S.C. § 846, conspiracy to distribute and to possess with intent to distribute fentanyl, a Schedule I controlled substance.

10. On April 26, 2024, members of the DEA Johnson City Post of Duty (JCPOD), WCSO, and 1st Judicial Drug Task Force executed a search warrant at a residence located in the vicinity of 1120 Miller Drive, Unit 202, Jonesborough, Tennessee.

11. Subsequent to the search warrant, investigators seized approximately 1,002 suspected fentanyl tablets[1] and a SCCY 9mm CPX-2 pistol. In addition, the possessor of the suspected fentanyl tablets and SCCY 9mm CPX-2 pistol agreed to cooperate with investigators (hereinafter referred to as CS).

12. On the same date, the CS allowed investigators to download the contents of his/her cellular telephone.

13. On April 30, 2024, TFO Matthew Cole, received the CS's cellular telephone download from the WCSO. As a result of the data extraction, TFO Cole found several text messages

---

[1] On April 29, 2024, TFO Vicchio conducted a presumptive field test of one of the 1,002 suspected fentanyl tablets, utilizing the MX908 Mass Spectrometer, which tested positive for the presence of fentanyl

5

between the CS and COOPER. The following is a text message conversation between COOPER and the CS regarding **Target Telephone 1**.

14. On April, 3, 2024, at approximately 12:53 PM to 9:30 PM, COOPER and the CS engaged in the following text message conversation:

CS to **Target Telephone 1**: *"Yo can you bring a green pair of Js and green air max 50s tmm then after I sell em I can pay ya and get rest of em"*

CS to **Target Telephone 1**: *"I'd have the Js already sold Jus lmk if ya can so I can get em tmm and get em gone"*

**Target Telephone 1** to the CS: *"I got you"*

Based on my training, experience, and knowledge in this case, I believe that the CS contacted Target **Telephone 1**, via text message, to discuss the future sale and distribution of 50 to 200 to suspected fentanyl tablets. Specifically, the CS is utilizing drug coded conversation, confirmed by **Target Telephone 1**, to discuss the quantity of fentanyl tablets that the CS will purchase. As per the conversation, with CS will purchase approximately 50 to 200 suspected fentanyl tablets from COOPER. COOPER further obtained the fentanyl pills from an unidentified source of supply reportedly located in the Knoxville, Tennessee area.

15. On April 4, 2024, at approximately 2:40 PM to 4:42 PM, COOPER and the CS engaged in the following text message conversation:

**Target Telephone 1** to the CS: *"How many again?*

CS to **Target Telephone 1**: *"Can you bring 2 pairs of green ones"*

CS to **Target Telephone 1**: *"That works better sooner so I can give dude his pair earlier Jus lmk when I'll be home"*

**Target telephone 1** to the CS: *"Yeah I'm grabbing cookout then otw"*

6

Based on my training, experience, and knowledge in this case, I believe **Target Telephone 1** contacted the CS, via text message, to discuss the future sale and distribution 200 to suspected fentanyl tablets. Specifically, the CS is utilizing drug coded conversation, confirmed by **Target Telephone 1**, to discuss the quantity of fentanyl tablets that the CS will purchase. As per the conversation, with the CS will purchase approximately 200 suspected fentanyl tablets from COOPER.

16. The following is a text message conversation between COOPER and the CS regarding **Target Telephone 2.**

17. On March 27, 2024, at approximately 1:14 PM to 1:15 PM, COOPER and the CS engaged in the following text message conversation:

CS to **Target Telephone 2**: *"I got 5 or 10 pairs of Jordan's sold later I think"*

**Target Telephone 2** to the CS: *"Bet"*

CS to **Target Telephone 2:** *"Getski"*

CS to **Target Telephone 2:** *"Betski"*

**Target Telephone 2** to the CS: *"Bet"*

18. Based on my training, experience, and knowledge in this case, I believe the CS contacted **Target Telephone 2** to advise that he/she will later sell 500 or 1,000 fentanyl tablets of behalf of COOPER. Specifically, COOPER and the CS are using drug coded conversation to discuss the future distribution of fentanyl tablets.

19. On April 24, 2024, at approximately 4:11 PM to 4:26 PM, COOPER and the CS engaged in the following text message conversation:

**Target Telephone 2:** to the CS: *"Can I call you later?"*

CS to **Target Telephone 2**: *"Yeah." Jus makin sure yanno I'm here*

CS to **Target Telephone 2**: *"I got 10 pairs gone tmm or next day"*

CS to **Target Telephone 2**: *"Yo good ("*

CS to **Target Telephone 2**: *"?"*

**Target Telephone 2:** to the CS: *"Im finishing up the screen then ill be out here"*

CS to **Target Telephone 2**: *"Ight bro"*

20. Based on my training, experience, and knowledge in this case, I believe the CS contacted **Target Telephone 2** to advise that he/she has 1,000 fentanyl tablets sold on behalf of COOPER. Specifically, I believe that the CS and COOPER utilize drug coded conversation in order for the CS to inform COOPER that 1,000 fentanyl tablets will soon be distributed.

21. In summary, I submit there is probable cause to believe that COOPER, utilizing the **Target Telephones**, is currently engaged in a conspiracy to distribute fentanyl. I know that members of drug trafficking organizations utilize the text messaging service on cellular telephones to communicate with each other regarding drug transactions. I know that members of drug trafficking organizations utilize numerous cellular telephones to communicate with each other regarding drug transactions. I believe that COOPER utilizes the Short Message Service (SMS, text messaging service) of the **Target Telephones** to communicate with others in furtherance of drug trafficking crimes.

## VERIZON WIRELESS ELECTRONIC COMMUNICATIONS

22. In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and un-retrieved voicemail and text messages for Verizon Wireless subscribers may be located on the computers of Verizon Wireless. Further, I am aware

that computers located at Verizon Wireless contain information and other stored electronic communications belonging to unrelated third parties.

23. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging".

24. I have spoken with representatives of Verizon Wireless and understand that during the regular course of business they may possess five to seven days of stored electronic communications, namely text messages.

25. On April 30, 2024, a letter was sent to Verizon Wireless requesting that they preserve all historical electronic communications associated with the **Target Telephone 1**, pursuant to 18 U.S.C. § 2703(f).

26. Additionally, on May 2, 2024, a letter was sent to Verizon Wireless requesting that they preserve all historical electronic communications associated with the **Target Telephone 2**, pursuant to 18 U.S.C. § 2703(f).

## LOCATION TO BE SEARCHED AND THINGS TO BE SEIZED

27. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Verizon Wireless to disclose to the government copies of the records and other information (including the content of communications) particularly described in Attachment A. Upon receipt of the information described in Attachment A, the information described in

9

Attachment B will be subject to seizure by law enforcement. The government will execute this warrant by serving it on Verizon Wireless, who will compile records at a time convenient to it. Therefore, I request that the Court authorize the execution of the warrant at any time of day or night.

## CONCLUSION

28. In summary, I submit there is probable cause to believe that COOPER utilizes the **Target Telephones** to currently engage in a conspiracy to distribute fentanyl with others in the Eastern District of Tennessee. Further, I believe that COOPER utilizes the **Target Telephones** in furtherance of drug trafficking activities.

29. Based on my training and experience, I know that those involved in drug trafficking activities commonly use multiple cellular telephones, to include text messaging capabilities, to contact others to discuss and arrange drug transactions and to further their illicit drug business. I also know that it is common for those involved in drug trafficking activities to change cellular telephones and telephone numbers frequently to avoid detection by law enforcement.

30. Based on the foregoing, there is probable cause to believe that the stored electronic communications, specifically stored text messaging and the associated packet data for the **Target Telephones**, contain evidence of drug trafficking, specifically violations of 21 U.S.C. §§ 841 and 846, distribution and possession with the intent to distribute fentanyl and conspiracy to distribute and possess with intent to distribute fentanyl, respectively.

31. I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

Matthew W. Cole, Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me on May 8, 2024

Cynthia Richardson Wyrick
United States Magistrate Judge

11



## ATTACHMENT A

Property to Be Searched

This warrant applies to information associated with cellular telephone numbers **(423) 557-5349** and **423-483-9328** that are stored at premises owned, maintained, controlled, or operated by Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921.

# ATTACHMENT B

Particular Things to be seized

## I. <u>INFORMATION TO BE DISCLOSED BY THE PROVIDER</u>

To the extent that the information described in Attachment A is within the possession, custody, or control of Verizon Wireless, including any messages, records, files, logs, or information that have been deleted but are still available to Verizon Wireless or have been preserved pursuant to a request made under Title 18, United States Code, Section 2703(f), Verizon Wireless is required to disclose the following information to the government for each account or identifier listed in Attachment A from April 21, 2024 to the present,

a. All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

b. All existing printouts from original storage of all of the text messages described above;

c. All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long-distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used;

d. All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

e. All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service

13

utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

    f.    Detailed billing records, showing all billable calls including outgoing digits;

    g.    All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number);

    h.    Incoming and outgoing telephone numbers;

    i.    All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

    j.    All records pertaining to communications between Verizon Wireless and any person regarding the account or identifier, including contacts with support services and records of actions taken.

## II. **INFORMATION TO BE SEIZED BY THE GOVERNMENT**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846 involving Noah William COOPER, and others known and unknown to the agents, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

    a.    Communications, documents, and media concerning violations of Title 21, United States Code, Sections 841 and 846.

    b.    Records relating to who created, used, or communicated with the account or identifier pertaining to violations of Title 21, United States Code, Sections 841 and 846, including records about their identities and whereabouts.